Filed 9/8/23  Asaro v. Augustine CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ANGELO ASARO, | H049867 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 20CV372731) |
| v. | |
| MICHAEL AUGUSTINE, | |
| Defendant and Respondent; | |
| JAMIN HORN et al., | |
| Interveners and Appellants; | |
| LORNA DROPE, | |
| Intervener and Respondent. | |

This appeal arises from an order disqualifying Brightwork Law PC and its attorneys, Jamin Horn and Briar Horn (collectively, Brightwork), from representing brothers Angelo Asaro (Angelo) and Anthony Asaro (Anthony) as plaintiffs in a civil action involving the estate of their father, Jerry.[1]  Under the most recent trust amendment

---

[1] For clarity, we refer to those parties who share a last name by their first names.  (See, e.g., *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 550, fn. 2.)  The record specifies that Jerry, father of Angelo and Anthony, has no last name.

executed by Jerry before his death, Angelo is a disinherited heir. Anthony, who suffers from cognitive impairment, is a beneficiary through a special needs trust that Jerry established for his benefit. The primary beneficiary of the trust property is defendant and respondent Michael Augustine (Augustine), a longtime friend and business partner of Jerry's, whom Jerry also appointed as successor trustee of the trust.[2]

At Brightwork's request, due to concerns that Anthony was vulnerable to influence by Augustine and others, the trial court appointed a guardian ad litem for Anthony in the trust litigation. The guardian ad litem, respondent Lorna Drope (Drope), immediately raised concerns about Brightwork's representation and, ultimately, moved to disqualify Brightwork based on its simultaneous representation of Anthony and Angelo. The trial court found that Brightwork's dual representation of Angelo and Anthony under the circumstances of the case created a direct and potential conflict of interest warranting disqualification.

On appeal, Brightwork and Angelo (together, appellants)[3] assert that the trial court erred because Angelo's and Anthony's litigation interests are aligned. They contend each brother would benefit from invalidating the most recent trust amendment and reverting to an earlier amendment of the trust. Drope maintains that appellants' argument is based on a misunderstanding of Anthony's status, rights, and remedies under the current trust amendment. Drope argues that because Anthony, through the special needs trust, is a beneficiary of the trust, plaintiffs' counsel breached their duty of loyalty by not pursuing claims that might benefit Anthony and were properly disqualified for representing clients with conflicting interests.

For the reasons explained below, we affirm the order.

---

[2] As described *post*, Augustine is the named defendant in the action underlying this appeal. Augustine has not filed a respondent's brief on appeal.

[3] Anthony is not a party to this appeal.

2

# I. FACTS AND PROCEDURAL BACKGROUND

## A. *Factual Background*

In September 1990, Jerry established the Jerry Family Trust (Trust). In September 2005, Jerry executed a First Amendment and Restatement of the Trust (First Amendment). Jerry also established the Anthony J. Asaro Special Needs Trust for Anthony (hereafter, special needs trust or SNT).

Jerry established the special needs trust after Anthony was rendered disabled from injuries he suffered in a beating inflicted during a robbery. The injuries left Anthony with memory deficits and impaired higher-order thinking. The SNT provides that Anthony "suffers from a disability which substantially impairs his ability to provide for his own care and custody and constitutes a substantial handicap." It directs the trustee and successor trustees to hold and dispose of the SNT "for the sole benefit of" Anthony. It defines the purpose and disposition of the trust as a way to facilitate Anthony's "financial eligibility for means-tested public benefits," such as supplemental security income (SSI) and Medicaid, and to supplement those aspects of Anthony's care not covered by public benefits.

The First Amendment named Jerry's two sons, Angelo and Anthony, as beneficiaries to the trust estate upon Jerry's death. It named Jerry's brother, Samuel J. Asaro (Sam), and a friend, Gary Canonica, as successor cotrustees.

Jerry executed further amendments and restatements to the Trust in May 2010 (Second Amendment) and January 2015 (Third Amendment). These amendments generally divided the trust property evenly between Angelo and to Anthony via the SNT.[4] For example, the Second Amendment provided that real property located at 788 and 794

---

[4] For simplicity, we generally describe the distributions for Anthony's benefit as if designated directly for Anthony. However, the trust amendments specify the property be distributed to "the then-serving Trustee of" the special needs trust. None of the trust amendments provides for distributions directly to Anthony.

3

N. Daniel Way (hereafter, the Daniel Way duplex) be evenly distributed between Angelo and Anthony and provided for monthly distributions of $1,000 each to Angelo and Anthony, with annual cost of living adjustments. The Third Amendment similarly provided for monthly distributions of $1,000 each to Angelo and Anthony. It further stated that any outstanding balance Angelo owed Jerry under a $500,000 promissory note secured by a deed of trust on the Daniel Way duplex would be forgiven and that Jerry's one-half interest in the duplex be divided equally between Angelo and Anthony. The Third Amendment additionally gifted real property located at 1727 Pope Court to Jerry's friend and business partner, Augustine.

In August 2019, Jerry executed a fourth amendment and restatement to the Trust (Fourth Amendment). The Fourth Amendment expressly provided for no distribution to Angelo and Anthony from the trust estate and named Augustine as the sole beneficiary. It also amended the appointment of successor trustees, naming Sam and Augustine as successor cotrustees.

After learning that the notarization of the Fourth Amendment was defective, invalidating the revision, Jerry consulted with an attorney who drafted a fifth amendment and restatement to the Trust (Fifth Amendment). The Fifth Amendment is the trust document at issue in the litigation underlying this appeal.

On July 2, 2020, Jerry executed the Fifth Amendment. The Fifth Amendment expressly states that Jerry provided Angelo an income producing property during his lifetime and Angelo "is to receive nothing under this Trust." It names Augustine and Anthony's special needs trust as beneficiaries. It directs the trustee to pay Augustine, in installments (with the exception of funds that the trustee places into the SNT), the net profit and income from the trust estate and "so much of the principal . . . up to the whole of it, as either" the trustee determines Augustine needs for his health, comfort, and/or support, or that Augustine requests.

4

The Fifth Amendment provides for Anthony as follows: "The Trustee shall place funds from the profits or income of the Trust into the [special needs trust], dated September 28, 2005. The amount and frequency of the payments into the [SNT] are within the sole discretion of the Trustee. The trustee is directed to take reasonable steps to assure that the corpus of the [SNT] is not reached by any third-party creditors." Upon Anthony's death, it provides for the remaining proceeds of the trust assets to be distributed to Augustine and his heirs.

The Fifth Amendment also amends the succession provisions. It designates Augustine as the successor trustee, followed by Sam (if Augustine is "unqualified or is unable to serve"). It specifies that Jerry's desire is for Augustine to "feel free to consult with" Sam "in making important decisions on behalf of the Trust."

Jerry died on July 13, 2020, shortly after executing the Fifth Amendment. At the time of Jerry's death, the trust estate was estimated to be worth approximately $10 million.

The parties dispute the circumstances under which Jerry executed the Fourth and Fifth Amendments to the Trust. According to the complaint, Jerry's failing health in the years prior to his death, including a back surgery in 2019 that left him blind, made him an "easy target for financial elder abuse, undue influence, and fraud." Appellants assert that Augustine took advantage of Jerry's vulnerable state and "orchestrated the signing, notarization, and payment for the preparation of the fourth amendment" to the Trust in August 2019, only one month after the back surgery that left him blind. Appellants further assert (though not alleged in the complaint) that 11 days after execution of the Fifth Amendment, which "elevated Augustine" to sole successor trustee, made him the beneficiary of the trust, and placed funding Anthony's special needs trust in Augustine's " 'sole discretion' " as successor trustee, Augustine drove Jerry from his care home to Jerry's previous residence, where Jerry used a gun to kill himself.

5

Respondent Drope counters that before his death, Jerry told friends and acquaintances that he did not want Angelo to receive anything from his estate. Jerry and Angelo had an "estranged relationship . . . on and off for years" preceding Jerry's death, related to Angelo's illegal drug use, which led Jerry ultimately to inform Angelo that he was going to be disinherited. According to Jerry's brother Sam, Jerry and Augustine were friends for 20 or 30 years and "worked together on everything." Jerry asked Sam to make sure Anthony was taken care of, and because of Sam's age (80 years at the time), Sam and Jerry agreed that Augustine should be named trustee because he was "much younger and would be there to take care of [Anthony]." Drope asserts it was Jerry's wish before he died that Anthony would be taken care of for the rest of his life.

*B. Procedural History*

A few months after Jerry's death, Brightwork filed suit on behalf of Angelo and Anthony, challenging the validity of the 2019 and 2020 estate plan amendments (Fourth and Fifth Amendments) and asserting tort and statutory claims against Augustine. The complaint, which asserts causes of action for financial elder abuse, intentional interference with expected inheritance, fraud, unjust enrichment, constructive trust, recovery of damages and attorney fees under Probate Code section 859, and equitable accounting, seeks among other remedies a declaration that the Fourth and Fifth Amendments are rescinded and void, and asks for compensatory, treble, and punitive damages.

Brightwork, which represents Angelo and Anthony on a contingency fee basis, successfully sought attachment orders against Augustine pursuant to Welfare and Institutions Code section 15657.01, which authorizes attachment of property based on a financial elder abuse claim that has probable validity. (Code Civ. Proc., § 484.090, subd. (a)(2).) Appellants contend that in opposing these efforts, Augustine argued the applications were based on "falsehoods" and asserted that Jerry "had intentionally disinherited Angelo because Angelo had disappointed Jerry." Yet appellants contend that

6

these explanations failed to explain why the Fifth Amendment sought to remove Sam as the successor cotrustee and why, as appellants characterize it, Jerry "demoted Anthony's special needs trust from a primary beneficiary to a discretionary, contingent beneficiary" and "disinherited Anthony personally." They argue that from the outset of the litigation, Augustine interfered with the attorney-client relationship between Brightwork and Anthony, including by submitting declarations purportedly signed by Anthony and stating that he had never consented to be a plaintiff in the action and that Augustine helped him financially. Appellants contend that during this time, Augustine made relatively few transfers into the SNT and appears to have attempted to shield $60,000 of estate assets from attachment.

As a result of this alleged interference, Brightwork attorney Briar went to Anthony's residence to speak with Anthony. Briar videotaped their conversation.[5] Appellants maintain that Anthony expressed his consent to Brightwork representing him in the litigation and stated that Augustine was giving Anthony's girlfriend Lisa Sissle (Sissle) weekly payments between $100 and $400 and that Sissle was restricting Brightwork's access to Anthony. After this, Brightwork successfully moved to enjoin Augustine from contacting Anthony or retaining any attorney or agents to perform work on Anthony's behalf. The trial court also granted Brightwork's request for the appointment of a guardian ad litem for Anthony and appointed Drope.

Drope states that at the time of her appointment as the guardian ad litem, Anthony was subsisting on a meager income dependent on public benefits and social security disability insurance (SSDI) benefits, lived with Sissle (his girlfriend) in a subsidized mobile home, suffered from several health issues and relied on the assistance of a wheelchair and scooter, and drove a 2002 vehicle with multiple mechanical and other problems. Drope's "main objective" was to provide Anthony with a better quality of life,

---

[5] This court granted appellants' motion to augment the record with exhibits, including the video recordings of the conversation between Briar and Anthony.

7

including a more stable home environment, a reliable form of transportation, and an upgraded and more reliable wheelchair.

Drope states that she recognized that allocating funds from the Trust to the SNT, as provided for under the Fifth Amendment, could accomplish the objective of improving Anthony's quality of life. However, she became concerned that appellants did not understand the terms of the Fifth Amendment and its potential benefits for Anthony. According to Drope, these circumstances created a conflict between Anthony, who remained a beneficiary of the Trust through the SNT, and Angelo, who did not. Furthermore, Drope noted that when Anthony began to express concerns about the litigation or even (purportedly) attempted to dismiss his case, appellants took the position that he was being improperly influenced and took steps (such as obtaining the preliminary injunction and appointment of the guardian ad litem) ostensibly to prevent Anthony from being further coerced.

According to Drope, Brightwork insisted that despite the provision in its contingency fee agreement which specifically allowed Anthony and/or Angelo to terminate its representation at any time, Brightwork's attorneys were the only counsel who could and did represent Anthony. Drope repeatedly attempted to terminate Brightwork's services on behalf of Anthony, but Brightwork refused to recognize Drope's authority to do so or acknowledge the conflict of interest in its representation of both brothers.

Instead, Brightwork filed a motion on behalf of Angelo for the removal and replacement of Drope as the guardian ad litem (removal motion). The removal motion reiterated Angelo's position that the contested changes to Jerry's estate plan, reflected in the Fifth Amendment, were "prepared under very unusual and highly suspicious circumstances" and "disinherited both Anthony and Angelo" (boldface omitted). The removal motion raised questions about Drope's response to Brightwork's information regarding Augustine's and Sam's conduct after Jerry's death. It pointed to Augustine's

8

alleged attempt to shield $60,000 from the attachment order by transferring funds from the Trust to a bank account purportedly created for the SNT, only to reverse the transfer later, and Sam's failure (as the successor trustee of the SNT) to request funds sooner from the Trust on behalf of the SNT. Brightwork, on behalf of Angelo, asserted that Drope's actions were contrary to Anthony's legitimate interests in the lawsuit and had failed to fulfill her fiduciary duty as guardian ad litem.

The trial court rejected these arguments and denied the removal motion. The court found that Drope's concern about a conflict of interest was substantially justified, even without resolving the pending question of whether Anthony's interests might be better served by the eventual outcome of the litigation or by negotiating with the Trust trustee for distributions to the SNT. The court found Drope's actions "consistent and in furtherance of [her] duty to protect the interests of Anthony." The court also noted Drope's conduct appeared to be consistent with Anthony's overall interests, in light of his health and immediate financial needs, and found "the evidence indicates that Anthony . . . wants to cease involvement in the lawsuit." The court observed the "qualitative distinction and difference between Angelo's undisputed status as a disinherited heir under the decedent's [F]ifth [A]mendment and Anthony's status as a beneficiary of the SNT." It further found that although Augustine has discretion as trustee over trust estate distributions, that discretion "is subject to Anthony's right to have the [guardian ad litem] petition the court for instructions and relief pursuant to Probate Code section 17200."

While the removal motion was pending, Drope filed the motion that is the subject of this appeal. The motion, titled "Motion for Order Granting Guardian ad Litem Authority to Retain and Pay Attorney to Pursue Civil Lawsuit, for Guardian ad Litem Fees, for Disqualification of Counsel, and for Disgorgement of Fees" (hereafter,

9

disqualification motion), sought to have Brightwork removed as counsel for Anthony based on the conflict of interest in the brothers' joint representation.[6]

Drope contended that Anthony never consented to being a plaintiff in the lawsuit, that Brightwork did not disclose the conflict of interest or seek Anthony's informed written consent regarding the conflict (as required by the California Rules of Professional Conduct), and that despite her efforts to terminate Brightwork's representation of Anthony based on the "blatant conflict of interest" in its representation of both brothers, Brightwork refused to withdraw. Drope raised multiple concerns about Brightwork's joint representation of Anthony and Angelo, including not only Angelo's disinheritance under the Fifth Amendment, while Anthony remains a beneficiary through the SNT, but also Anthony's acknowledgment that Angelo is disinherited pursuant to their father's wishes and Anthony's familial relationship with Augustine. Drope argued that each of these circumstances creates a conflict of interest between Angelo and Anthony; yet Brightwork has refused to acknowledge the conflict and has considered only Angelo's interest in the litigation, in breach of the firm's duty of loyalty to Anthony.

Brightwork, in opposition, contended there is no irreconcilable or "directly adverse" conflict of interest to support disqualification, because Anthony is not a beneficiary of the Trust and the SNT is a mere contingent beneficiary, subject to the discretion of Augustine (as trustee of the Trust) and Sam (as trustee of the SNT). Brightwork disputed Drope's claim that pursuing a Probate Code section 17200 petition for distribution would be most beneficial to Anthony and maintained that the present lawsuit was "Anthony's only hope for any recovery."

---

[6] The other issues raised by the disqualification motion, including Drope's request pursuant to Probate Code section 1003 and Code of Civil Procedure section 372 to be granted the authority to retain counsel to represent her in her capacity as guardian ad litem for Anthony, and for Drope and her retained counsel to be paid out of the Trust for their work on behalf of Anthony, are not at issue in the appeal.

10

On March 10, 2022, the trial court issued its ruling on the disqualification motion in a minute order adopting its prior tentative ruling. On April 21, 2022, the trial court entered an order granting the disqualification motion (order). The court recognized the authority of the guardian ad litem to control the litigation on behalf of the ward (here, Anthony) and, by extension, to "act on the ward's behalf on matters pertaining to legal representation in the action, including retaining, communicating," and dismissing counsel, subject to a court proceeding if the dismissal is contested. The court found that Brightwork had effectively conceded (by failing to oppose) that Anthony wished to end Brightwork's representation and did not wish to be a party to the action, that the guardian ad litem had "good cause" to support Anthony's wishes to terminate Brightwork's representation, and "that the facts support a cause for concern . . . about the conflict of interest between the plaintiffs." The trial court concluded that Drope's actions "were in furtherance of" her duties as guardian ad litem to protect the interests of Anthony.

The trial court further found that Brightwork's concurrent representation of Anthony and Angelo created a "direct and potential" conflict of interest arising from Anthony's status as beneficiary of the SNT, which is a beneficiary of the Trust, and Angelo's status as a disinherited heir under the Trust. The court found "a multitude of situations that this foundational conflict of interest permeates" and noted "an additional, direct conflict of interest" among the brothers based on evidence which suggests that "Anthony may disagree with certain material allegations of the complaint."

The trial court looked to applicable principles of trust law and reasoned that the "law affords timely remedies" (such as a Probate Code section 17200 petition) for a beneficiary, like Anthony, who seeks to challenge a trustee's exercise or failure to exercise discretion consistent with the intent of the trustor. The court found "[t]he existence of a fiduciary relationship between the trustee(s) and beneficiary, and duties that arise from that relationship, is a material, substantive difference in rights and interests of Anthony as a beneficiary in contrast to Angelo's status as a disinherited heir."

11

While "not as egregious as an attorney's concurrent representation of a client suing another client," the court found the brothers' interests in the litigation to be "adverse and conflicting," found no evidence of informed written consent to dual representation, and found there was a significant risk that Brightwork's "ability to consider, recommend, or carry out an appropriate course of action for one client will be materially limited" because of the firm's duty to the other client. The court found the risk in this case to be "elevated" because Brightwork appears not to "acknowledge or recognize the significance of the conflict of interest."

Applying the legal authority governing disqualification standards in cases of concurrent representation, the court determined that disqualification was required. It ordered Brightwork "disqualified from further representation of plaintiffs in this action." The court addressed the other aspects of the disqualification motion, granted the authorization for the guardian ad litem to retain legal counsel, approved the guardian ad litem's request for fees, and denied without prejudice the request for disgorgement of any fees paid to Brightwork.

Appellants Angelo and Jamin (attorney for Brightwork) appealed the disqualification order, and Briar and Brightwork later filed a cross-appeal to join Angelo and Jamin in challenging the disqualification order.[7] An order on a motion to disqualify counsel is directly appealable. (*Jarvis v. Jarvis* (2019) 33 Cal.App.5th 113, 128.) Pursuant to stipulation of the parties, the trial court stayed further proceedings pending resolution of this appeal.

---

[7] Because the notice of appeal for Angelo and Jamin was filed after the disqualification order was rendered but before it was entered, the notice may be "treated as filed immediately after entry of" the order. (Cal. Rules of Court, rule 8.104(d)(1).) Briar and Brightwork timely filed their cross-appeal after entry of the disqualification order.

12

## II. DISCUSSION

Appellants contend the trial court erred in ruling there was a conflict that required disqualification. They maintain that both brothers share an interest in invalidating the Fifth Amendment of the Trust and their litigation interests are aligned. They assert that whether there was a conflict in the joint representation of Angelo and Anthony presents a legal question subject to this court's independent review. Appellants further argue that the factual question of whether Anthony wanted or still wants to be a plaintiff in the action is irrelevant to the conflict-of-interest analysis. They nevertheless maintain that the trial court, upon remand, should conduct an evidentiary hearing to determine Anthony's wishes and whether withdrawal from the litigation serves his legitimate interest.

In response, Drope maintains that the applicable standard of review of an attorney disqualification order is abuse of discretion. Drope contends that appellants fail to address the authority of the guardian ad litem to direct the litigation in the best interest of her ward, including hiring and firing counsel, and furthermore ignore the trial court's finding that the brothers' litigation interests are dissimilar because, as a beneficiary of the Trust, Anthony has remedies available to him that Angelo does not. Drope asserts that appellants breached their duty of loyalty to Anthony by pursuing Angelo's interests while using Anthony as "a pawn" and consequently cannot continue their representation.

### A. Standard of Review

An order disqualifying counsel is typically reviewed for abuse of discretion. (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159 (*Charlisse C.*); *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 (*SpeeDee Oil*).) Under this standard, we review a trial court's factual findings for substantial evidence and its conclusions of law de novo. (*Charlisse C.*, at p. 159.) In other words, "[i]f the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings

13

supported by substantial evidence. [Citations.] . . . [W]here there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law." (*SpeeDee Oil*, at pp. 1143–1144.) The court's ultimate decision based on its application of law to the facts is reversible only if arbitrary and capricious. (*Charlisse C.*, at p. 159; see *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 712 (*Haraguchi*).) Even so, because a disqualification motion implicates special concerns about the administration of justice and a party's right to choose counsel, a careful review of the trial court's exercise of discretion is warranted. (*SpeeDee Oil*, at p. 1144.)

### B. Governing Legal Principles

Under California law, every court has the authority "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." (Code Civ. Proc., § 128, subd. (a)(5).) The court's power to disqualify an attorney derives from that authority. (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1145.) The court's "paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." (*Ibid*.) Other considerations might include "a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion." (*Ibid*.)

The California Supreme Court has described two factual contexts ("successive representation" and "simultaneous representation") in which conflicts of interest commonly arise. (See *Charlisse C.*, *supra*, 45 Cal.4th at pp. 159–160.) In each context, the "primary fiduciary value at stake . . . differs, and the applicable disqualification standards vary accordingly." (*Id*. at p. 159.)

Successive representation, though not at issue in this case, arises "where an attorney seeks to represent a client with interests that are potentially adverse to a former client of the attorney." (*Charlisse C.*, *supra*, 45 Cal.4th at p. 159.) In those

14

circumstances, "the chief fiduciary value jeopardized is that of client confidentiality." (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283, italics omitted (*Flatt*).)

By contrast, in simultaneous representation cases, "an attorney seeks to represent in a single action multiple parties with potentially adverse interests." (*Charlisse C.*, *supra*, 45 Cal.4th at p. 159.) "The primary value at stake in cases of simultaneous or dual representation is the attorney's duty—and the client's legitimate expectation—of loyalty, rather than confidentiality." (*Flatt*, *supra*, 9 Cal.4th at p. 284, italics omitted.)

The duty of loyalty requires attorneys "to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process." (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1146.) "The effective functioning of the fiduciary relationship between attorney and client depends on the client's trust and confidence in counsel. [Citation.] The courts will protect clients' legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship. [Citation.] Therefore, if an attorney—or more likely a law firm— simultaneously represents clients who have conflicting interests, a more stringent per se rule of disqualification applies." (*Id.* at pp. 1146–1147; see *Flatt*, *supra*, 9 Cal.4th at p. 284 ["[I]n all but a few instances, the rule of disqualification in simultaneous representation cases is a per se or 'automatic' one."].)

*C. Analysis*

We address the parties' dispute about the governing standard of review before turning to the merits of appellants' contentions.

The trial court's decision comprised a combination of factual and legal findings and application of law to facts. As such, our review consists of a mixed standard of deference, in which we review factual findings for substantial evidence, any conclusions of law de novo, and the trial court's decision on disqualification for abuse of discretion. (*Charlisse C.*, *supra*, 45 Cal.4th at p. 159; *Haraguchi*, *supra*, 43 Cal.4th at p. 712.)

15

However, certain factual disputes before the trial court in the disqualification motion, including whether Anthony wished to discharge Brightwork and end his participation as a plaintiff in the litigation, are peripheral to the decision under review. That is, the disqualification of Brightwork and its counsel does not rest on Anthony's desire to be represented (or not represented) by Brightwork. The central question on appeal—whether Brightwork's dual representation of Anthony and Angelo creates a conflict of interest due to each brother's distinct treatment under the Trust—is not dependent on disputed factual issues. Instead, we decide that issue as a question of law based on whether conflicting interests arise from the trust document's specification of each brother's status. (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1144; see, e.g., *Baker Manock & Jensen v. Superior Court* (2009) 175 Cal.App.4th 1414, 1420 [deciding as a legal question whether the circumstances presented a conflict of interest]; *Coldren v. Hart, King & Coldren, Inc.* (2015) 239 Cal.App.4th 237, 245 [same].)

To the extent we determine that the brothers' respective positions under the Fifth Amendment creates a conflict, we review the trial court's ultimate determination (applying the relevant legal principles to the facts of the case and considering the nature of the conflict) under the abuse of discretion standard. (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1143; *Charlisse C.*, *supra*, 45 Cal.4th at p. 159.) We will not reverse the trial court's application of law to the facts absent a showing by appellants that the decision was arbitrary or capricious. (*Charlisse C.*, at p. 159)

Turning to the key issue of whether Anthony's and Angelo's interests are aligned or in conflict, we disagree with appellants' contention that the brothers' different treatment under the Fifth Amendment "do[es] not present a conflict because this action serves both of their litigation interests." Appellants' characterization of the conflict of interest as merely hypothetical ignores the range of potential actions (short of invalidating the Fifth Amendment) available to Anthony as a beneficiary of the SNT and Trust, and the authority of the guardian ad litem to control the litigation for his benefit.

16

1. Conflict of Interest

A conflict of interest during simultaneous representation arises when "an attorney seeks to represent in a single action multiple parties with potentially adverse interests." (*Charlisse C.*, *supra*, 45 Cal.4th at p. 159.) "Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process." (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1146.) Where an attorney's responsibilities to one client risk materially limiting the attorney's representation of another, a per se rule of disqualification may apply. (*Id*. at pp. 1146–1147.) In accordance with these principles, the California State Bar Rules of Professional Conduct provide that, absent informed written consent, a lawyer "shall not . . . represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, . . . or by the lawyer's own interests." (Rules Prof. Conduct, rule 1.7(b) (hereafter, Rule 1.7).)

Appellants recognize that the provisions of Rule 1.7 protect an attorney's duty of loyalty toward their client, and that simultaneous representation breaches that duty when it hinders an attorney from acting in each client's best interests. Indeed, appellants cite case authority defining a conflict of interest in simultaneous representation as occurring when "the common lawyer's representation of the one is rendered less effective by reason of his representation of the other" (*Spindle v. Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 713), or the " 'lawyer's duty on behalf of one client obligates the lawyer to take action prejudicial to the interests of another client; i.e., "when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." ' " (*Havasu Lakeshore Investments, LLC v. Fleming* (2013) 217 Cal.App.4th 770, 778 (*Havasu*).)

Yet appellants contend there is no such conflict here because there is no direct adversity (see, e.g., Rule 1.7(a)) or significant risk of a material limitation in Brightwork's representation of the brothers. Instead, appellants assert that the litigation

17

interests of both brothers are aligned and characterize any conflict as theoretical. Specifically, appellants contend that Augustine's plenary discretion over distributions to the special needs trust, and his alleged conduct influencing Jerry's estate revisions and largely failing to fund the SNT, render any perceived conflict in Brightwork's representation "more apparent than real" (*McPhearson v. Michaels Co.* (2002) 96 Cal.App.4th 843, 851) and render illusory Anthony's interest in the Trust estate.

We disagree. Under the Fifth Amendment, Angelo receives "nothing under this Trust." While the amendments make Augustine the beneficiary of the Trust profits, income, and principal, they also direct Augustine (as trustee) to fund the SNT "from the profits or income of the Trust." Anthony is the beneficiary of the SNT. By its terms, Anthony is a beneficiary of the Trust under the Fifth Amendment, through his SNT, while Angelo is a disinherited heir.

Moreover, the funding of the SNT is not discretionary, though the amount and frequency of payments into the Trust are within the trustee's "sole discretion." Contrary to appellants' contention that Anthony's interest in the Trust estate as a contingent beneficiary through the SNT is illusory, the Fifth Amendment states that the "Trustee *shall place funds* from the profits or income of the Trust into the [SNT]." (Italics added.) This language comports with the preceding provision authorizing the trustee to make distributions from the Trust estate for Augustine's benefit "except as set forth below" (underscoring omitted) and limits the discretion of the Trustee to decline to fund the SNT.

The discretion of the trustee to distribute the Trust estate to Augustine outright is further limited by the Fifth Amendment's treatment of the "Distribution of Balance of Trust Estate," which directs the remaining proceeds of the Trust to be distributed to Augustine and his heirs upon Anthony's death (not before). Because the amount and frequency of distributions to the SNT are discretionary under the Fifth Amendment (as opposed to being capped at a designated monthly amount, as under the Third

18

Amendment), Anthony could potentially receive greater distributions under the Fifth Amendment.

Appellants rely on *Steuer v. Franchise Tax Board* (2020) 51 Cal.App.5th 417 for the proposition that a beneficiary's interest is wholly contingent where the trust document conditions distributions upon the trustee's "sole absolute discretion" to make them. (*Id.* at pp. 432–433.) However, *Steuer* is distinguishable in that the trust document in that case not only granted absolute discretion to the trustee to make distributions of trust income and principal but also specified that "that authority 'shall not *require* the Trustee to make any distribution to any person.' " (*Id.* at p. 432.) By contrast, the Fifth Amendment explicitly directs that the trustee "shall place funds" in the SNT.

That the trustee has discretion to decide the amount and frequency of those distributions does not diminish Anthony's interest as the beneficiary of the SNT or render illusory his beneficiary status with respect to the Trust. Indeed, the "discretion granted a trustee, . . . can never be employed to cancel the intention of the settlor or defeat the purpose of the trust" where the trustee "owes a duty to make allowances" to the beneficiaries. (*In re Miller's Estate* (1964) 230 Cal.App.2d 888, 909.) Case authority thus supports the trial court's assessment that there is a substantive difference between a beneficiary where the trustee is vested with discretion but nevertheless has a duty to exercise that discretion consistent with the intent of the trustor, and an heir who has been "disinherited outright."

Drope asserts that the current estate plan, if properly administered, will allow Anthony to substantially improve his living conditions and quality of life as an existing beneficiary through the SNT. According to Drope, there are several ways that Anthony may pursue his interests other than a civil action to invalidate the trust in its entirety, the only litigation objective which would benefit Angelo. Anthony's options include a petition under Probate Code section 17200, which authorizes a beneficiary to petition the court "concerning the internal affairs of the trust" (*id.*, subd. (a)) including proceedings to

19

decide questions of construction (*id*., subd. (b)(1)), to petition for instructions (*id*., subd. (b)(6)), and to appoint or remove a trustee (*id*., subd. (b)(10)). (See *Barefoot v. Jennings* (2020) 8 Cal.5th 822, 827.)

Drope contends that if she can successfully pursue relief on behalf of Anthony, Anthony's SNT recovery will likely be far greater than any benefit he might recover as a result of the civil litigation (in part because it will not be subject to Brightwork's 40% attorney fee contingency agreement, or to division of the estate with Angelo) and will comport with Jerry's wishes for Anthony to be taken care of via distributions to the SNT. Drope argues that by failing to pursue any of these remedies, and by focusing exclusively on the sole remedy available to Angelo, Brightwork breached its duty to Anthony by limiting its consideration of those remedies available to Anthony and potentially in his best interest to pursue.

Appellants disagree with this assessment and assert various reasons that a Probate Code section 17200 petition would fail to benefit Anthony. For example, they argue that because the SNT, not Anthony, is the beneficiary of the Trust, Sam as trustee for the SNT would need to initiate the section 17200 petition against Augustine. Appellants argue it is "speculative at best" to expect Sam to bring a petition against Augustine, since Sam has aligned himself with Augustine in this litigation and it is questionable whether he has fulfilled his own fiduciary duties toward Anthony. Appellants also argue that even if Sam were to bring a Probate Code section 17200 petition, it would fail because the probate court would rely upon the Fifth Amendment's language giving Augustine sole discretion over the "amount and frequency of the payments into the [SNT]." Appellants further assert that Drope's "hypothetical scenarios" relying on the possibility that Augustine might voluntarily forego Jerry's estate, or direct a substantial portion of its proceeds to fund the SNT, do not create a conflict meriting disqualification. Appellants moreover contend that Drope has not refuted appellants' foundational claim that both

brothers share the goal of vacating the Fifth Amendment and reverting to the Third Amendment.

None of these arguments is persuasive. We need not decide here whether Anthony himself (as opposed to Sam, as trustee for the SNT) has standing to initiate a Probate Code section 17200 petition, or whether and to what extent the court would interpret the language of the trust document as requiring the trustee to fund the SNT in fulfillment of Jerry's wishes. It is enough to observe, upon our independent review, that the text of the Fifth Amendment cannot be reconciled with appellants' conviction that Anthony has been effectively disinherited and that his interests in the Trust estate under the Fifth Amendment are illusory. The conflict arising here is not merely hypothetical. (See *Havasu*, *supra*, 217 Cal.App.4th at p. 779 [noting that while "a mere *hypothetical* conflict is insufficient," it is enough that there exists "some identifiable potential conflict"].)

Anthony's interests as a beneficiary of the Trust through the SNT warrant his counsel's consideration of all possible alternatives—including alternatives (like the filing of a Probate Code section 17200 petition) that will place him in a position adverse to Angelo. Reasonable minds may differ as to the most appropriate means for Anthony to exercise his interest in securing distributions to the SNT and maximizing his benefit under the Trust. But Brightwork cannot "maintain undivided loyalty" (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1146) on behalf of Angelo while simultaneously advocating for Anthony's rights under the Trust. Appellants' continued assertion that both brothers would benefit from reverting to the Third Amendment, under which the brothers (Anthony through the SNT), not Augustine, are the primary beneficiaries of the Trust assets, is flawed because it fails to consider Anthony's potential prospects and ability to benefit under the Fifth Amendment short of invalidating the Fifth Amendment.

Brightwork's simultaneous representation of the brothers under these circumstances presents the type of conflicted position that "may materially limit the lawyer's ability to recommend or advocate all possible positions . . . because of the

lawyer's duty of loyalty to the other clients." (Rule 1.7, com. 4.) While we do not doubt Brightwork's desire to serve both brothers' interests by aligning them to a single strategy, the duty of loyalty precludes a practitioner, regardless of whether his intention or motives are honest, " 'from assuming any relation which would prevent him from devoting his entire energies to his client's interests' " (*Flatt*, *supra*, 9 Cal.4th at p. 289, italics omitted) and " 'from putting himself in a position where he may be required to choose between conflicting duties, or be led to attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent.' " (*Ibid.*) We therefore conclude that Brightwork's simultaneous representation of Anthony and Angelo presents a conflict of interest, actually and potentially, arising from Anthony's status as a beneficiary of the Trust through the SNT and from Angelo's status as a disinherited heir.[8]

We further conclude that given the nature of the conflict of interest, the trial court's decision to disqualify Brightwork from representing Anthony and Angelo was neither arbitrary nor capricious. (*Charlisse C.*, *supra*, 45 Cal.4th at p. 159; see *SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1143.) In assessing the existence of an actionable conflict, the "critical questions are the likelihood that a difference in interests exists or will eventuate

---

[8] After the close of briefing in the appeal, respondent Drope filed a request for judicial notice with respect to certain court records filed in the Santa Clara Superior Court case No. 23PR194381, *In re: The Jerry Family Trust* (probate case). These probate case records include copies of a petition to compel accounting, filed on March 7, 2023, by Drope as guardian ad litem for Anthony, and the objection by Augustine and reply thereto, as well as certified copies of the trial court's minute orders granting the petition to compel accounting and directing a distribution of $200,000 from the Jerry Family Trust to Anthony's Special Needs Trust. Drope asserts that these court records, which postdate the order at issue in this appeal, support her position in response to the appeal and amply demonstrate that the Asaro brothers do not have an identical interest in the outcome of the litigation.

Having concluded based on the trust document that an actual and potential conflict of interest exists in Brightwork's representation of both Asaro brothers, we deny the request for judicial notice as unnecessary to our resolution of the appeal.

22

and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of each client." (Rule 1.7(b), com. 4.) The trial court in this case reasonably ascertained that Drope's motion demonstrated "knowledge and understanding . . . about the Fifth Amendment, Trust and SNT, the issues involved, actual and potential conflicts of interest between [Anthony and Angelo], and applicable law." The court also observed that there is no evidence in the record that Brightwork informed Anthony or Angelo of the conflict or its potential consequences before entering into the fee agreement, or obtained either brother's informed written consent concerning their respective recovery options. Under these circumstances, the trial court did not abuse its discretion in ordering Brightwork's disqualification. (*SpeeDee Oil*, at pp. 1146–1147; *Flatt*, *supra*, 9 Cal.4th at p. 284.)

2. Authority of the Guardian Ad Litem to Discharge Counsel

Independent of this basis for disqualification, the trial court credited Drope's assertion that Anthony wished to withdraw as a plaintiff in this action, found there was good cause for Drope's support of her ward's wishes in that respect, and found that Drope's actions were in furtherance of her duty to protect Anthony's interests. The court concluded that this was "sufficient ground in [and] of itself for terminating plaintiffs' attorneys['] representation of Anthony."

Appellants challenge that conclusion as unsound and urge this court to remand the matter for the trial court to conduct an evidentiary hearing to determine whether Anthony wants to continue participating in the action and, if not, whether Anthony withdrawing from the action would serve his legitimate interest. Appellants argue that the record lacks substantial evidence that Anthony wants to withdraw as a plaintiff, especially given the contradictory declarations submitted by both sides (each purporting to express Anthony's position), Anthony's incompetency, the videotaped interview submitted by appellants in support of their opposition to the disqualification motion (which they argue contradicts

23

the declaration submitted by Augustine on behalf of Anthony), and that Anthony has never appeared in court to state his wishes. Appellants contend that inasmuch as Anthony's wishes are relevant to his participation in the action, the trial court should ensure that those wishes do not undermine Anthony's litigation interest, which appellants maintain lies in invaliding the Fifth Amendment and reverting to the Third Amendment.

Having decided that the trial court did not abuse its discretion in concluding that Brightwork's simultaneous representation of Anthony and Angelo creates a conflict of interest warranting disqualification, we need not address this separate and independent basis for terminating Brightwork's representation of Anthony. As noted in our analysis of Brightwork's conflict of interest, *ante*, Anthony's wishes regarding his representation are not directly pertinent to the disqualification issue. While we agree with appellants that Anthony's wishes are relevant to his participation in this action, they are not determinative of what might be in his best interest with respect to ensuring that he ultimately receives the benefit due to him by way of distributions to the SNT. Moreover, it is precisely because of the contradictory statements regarding Anthony's position in this action and his potential vulnerability to influence due to his cognitive impairment that the trial court appointed Drope to serve as his guardian ad litem.

Appellants argue that Drope's authority to discharge Anthony's counsel is not unfettered, and the court must prevent the discharge if it would not serve Anthony's best interests. To be sure, the purpose of the appointment of guardian ad litem is to represent the interest of the incompetent person (Prob. Code, § 1003, subd. (a)(2)) and act as an officer of the court, whose duty is to protect the interest and rights of the ward. (*County of Los Angeles v. Superior Court* (2001) 91 Cal.App.4th 1303, 1311; *In re Christina B.* (1993) 19 Cal.App.4th 1441, 1453.) The power of the guardian ad litem to control the ward's litigation-related interests and make fundamental decisions affecting the litigation must always have " ' "the interest of the guardian's charge in mind" ' " and remains subject to the court's supervisory authority. (*Carachure v. Scott* (2021) 70 Cal.App.5th

24

16, 31; see Code Civ. Proc., § 372, subd. (a)(3); *In re Christina B.*, at pp. 1453–1454.) However, these principles do not alter this court's review of the disqualification motion as the issue on appeal.

In sum, after careful review of the disqualification order based on the record of this case, we agree with the trial court's assessment of a conflict of interest and conclude the court did not abuse its discretion in disqualifying Brightwork from representing plaintiffs in the action. Because the record and legal authority support the trial court's decision to disqualify Brightwork, we decline to address appellants' additional contentions regarding Drope's intent to discharge Brightwork from representing Anthony and whether Anthony's withdrawal from the litigation would serve his best interest.

### III. DISPOSITION

The order disqualifying Brightwork from representing plaintiffs is affirmed. Respondent Drope is entitled to her reasonable costs incurred on appeal. (Cal. Rules of Court, rule 8.278(a)(4).)

_____

Danner, J.

WE CONCUR:

_____

Bamattre-Manoukian, Acting P.J.

_____

Wilson, J.

**H049867**
*Asaro et al. v. Augustine*